# 12-2909-cv(L),
## 12-2912-cv(CON), 12-3619-cv(CON), 12-3621-cv(CON)

# United States Court of Appeals
### *for the*
# Second Circuit

SANDRA C. BARKLEY, AKA Sandra C. Barklay,

*Plaintiff-Counter Defendant-Cross-Defendant-Appellee,*

SCAROLA MALONE & ZUBATOV LLP,

*Appellee,*

v.

OLYMPIA MORTGAGE COMPANY,

*Defendant-Counter Claimant-Cross-Defendant,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS
## UNITED PROPERTY GROUP, LLC, UNITED HOMES, LLC
## AND GALIT NETWORK, LLC

|  |  |
|---|---|
| | LITTLETON JOYCE UGHETTA PARK & KELLY LLP |
| | *Attorneys for Defendants-Appellants United Property Group, LLC, United Homes, LLC and Galit Network, LLC* |
| | The Centre at Purchase |
| JASON P. SULTZER, ESQ. | Four Manhattanville Road, Suite 202 |
| BRYON L. FRIEDMAN, ESQ. | Purchase, New York 10577 |
| *Of Counsel* | (914) 417-3400 |

THOMAS MESSINA, DLJ MORTGAGE CAPITAL LLC,

*Defendants-Cross-Defendants-Cross-Claimants*,

ALLIANCE MORTGAGE CORPORATION, DBA Everyhome Mortgage Company, WILSHIRE CREDIT CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, XYZ CORPORATION, (Said name being fictitious, it being the intention of Plaintiff to designate any corporation having a legal interest in Plaintiff's mortgages), JP MORGAN CHASE BANK, as Trustee for the Home Equity Trust Series 2003-3 substituted as deft for Wilshire Credit Corporation and XYZ Corporation, MICHAEL B. CHEATHAM, CREDIT SUISSE FIRST BOSTON LLC, CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES, INC., BENJAMIN TURNER,

*Defendants-Cross-Defendants*,

MICHAEL MASCIALE, CERTILMAN BALIN ADLER & HYMAN, LLP,
*Defendants*,

UNITED PROPERTY GROUP, LLC, UNITED HOMES, LLC, GALIT NETWORK, LLC, YARON HERSHCO,

*Defendants-Cross-Defendants-Cross-Claimants-Appellants*.

# Table of Contents

Table of Contents ................................................................................................i

Table of Authorities ........................................................................................ ii

Preliminary Statement ...................................................................................1

Argument..........................................................................................................1

  **1.** Consolidation Prejudiced the Defendants, and the District Court did not Even Balance that Prejudice with Effective Curative Instructions ...............1

  **2.** The Plaintiffs Offer No Authority Supporting a Separate Cause of Action Sounding in Civil Conspiracy ............................................................7

  **3.** The Plaintiffs Offer No Authority Disputing the Merger Clauses' Effectiveness........................................................................................................8

  **4.** The Plaintiffs did not Identify Factual Misstatements Supporting their Fraud Claim or Providing Any Reason to Disregard the *Caveat Emptor* Doctrine ...........................................................................................................11

  **5.** The Evidence did not Support the Punitive Damage Awards......................14

    **A.** The Plaintiffs Offer No Authority Disputing the Appellants' Contention that Punitive Damages Requires Clear and Convincing Proof of Malice or Ill Will..................................................................................................14

    **B.** The Plaintiffs Identify No Clear and Convincing Proof of Malice or Ill Will.................................................................................................................14

  **6.** Punitive Damages were not Available Under N.Y. General Business Law § 349 ......................................................................................................16

  **7.** The Plaintiffs Identified No Authority for Allocating the Offset under General Obligations Law 15-108 Based on the Theory of Recovery..........17

  **8.** The Attorneys' Fee Award was Disproportionate and Unreasonable. ........19

  **9.** The Defendants did not Waive their Appellate Issues .................................22

Conclusion .......................................................................................................24

# Table of Authorities

## Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008) ..................................................................21

*Aylaian v. Town of Huntington*,
    459 Fed. Appx. 25 (2d Cir. 2012) .......................................................11

*Bernstein v. Antar (In re Crazy Eddie Sec. Litig.)*,
    948 F. Supp. 1154 (E.D.N.Y. 1995)............................................. 18, 19

*Bethka v. Jensen*,
    250 A.D.2d 887 (3d Dep't 1998) .........................................................12

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989) ..............................................................................21

*Bridger v. Goldsmith*,
    143 N.Y. 424 (1894).............................................................................8

*Chubb & Son Inc. v. Kelleher*,
    2010 U.S. Dist. LEXIS 141842 (E.D.N.Y. 92 CV 4484 Oct. 22, 2010) .............18

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    70 N.Y.2d 382 (1987)..........................................................................11

*Colon v. Automatic Retailers Assoc. Service, Inc.*,
    74 Misc. 2d 478 (Sup. Ct. N.Y. County 1972)....................................21

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317 (1959)........................................................... 8, 9, 11, 12

*Dashnaw v. Usen*, 05-CV-1592,
    2006 U.S. Dist. LEXIS 41498 (N.D.N.Y. Jun. 21, 2006)............................ 4, 5, 6

*Debruyne v. National Semiconductor Corp. (In re Repetitive Stress Injury Litig.)*,
    11 F.3d 368 (2d Cir. 1993) ................................................................5, 7

*Diaz v. Paragon Motors of Woodside, Inc.*, CV-03-6466,
    2007 U.S. Dist. LEXIS 73230 (E.D.N.Y. Sep. 28, 2007)....................21

*F.H. Krear & Co. v. Nineteen Named Trustees*,
    810 F.2d 1250 (2d Cir. 1987)...............................................................21

*Getty Petroleum Corp. v. Island Transp. Corp.*,
  862 F.2d 10 (2d Cir. 1988),
  *cert. den.*, 490 U.S. 1006 (1989) ........................................................................18

*Grove Press, Inc., v. Angleton*,
  649 F.2d 121 (2d Cir. 1981) ...................................................................................7

*Hart v. Moore*,
  155 Misc. 2d 203 (1992) .......................................................................................16

*Hendrix v. Raybestos-Manhattan, Inc.*,
  776 F.2d 1492 (11th Cir. 1985).................................................................... 2, 3, 6

*In re New York City Asbestos Litig.*,
  82 N.Y.2d 342 (1993)............................................................................................18

*Jablonski v. Rapalje*,
  14 A.D.3d 484 (2d Dep't 2005) ............................................................................13

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir.),
  *cert. den.*, 498 U.S. 920 (1990) .................................................................... 2, 3, 6

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974)................................................................................21

*Johnson v. United States*,
  520 U.S. 461 (1997) ..............................................................................................24

*Konits v. Valley Stream Cent. High Sch. Dist.*,
  350 Fed. Appx. 501(2d Cir. 2009) .......................................................................22

*Latiuk v. Faber Constr. Co.*,
  269 A.D.2d 820 (4th Dep't 2000) ........................................................................16

*Light v. W2001 Metro. Hotel Realty LLC*, 10 Civ. 4449,
  2011 U.S. Dist. LEXIS 59189 (S.D.N.Y. Jun. 2, 2011)......................................14

*Lukaszuk v. Sudeen*,
  2007 U.S. Dist. LEXIS 95919 (E.D.N.Y. CV 02-5143 Nov. 27, 2007)..............18

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011)............................................................................................15

*Martinez Tapia v. Banque Indosuez*, 99-7170,
  1999 U.S. App. LEXIS 29260 (2d Cir. Nov. 3, 1999).........................................12

*Oquendo v. Federal Reserve Bank*,
   98 F.2d 708 (2d Cir.),
   *cert. den.*, 305 U.S. 656 (1938) ...........................................................12

*Pahuta v. Massey-Ferguson, Inc.*,
   170 F.3d 125 (2d Cir. 1999) ................................................................23

*Pimpinello v. Swift & Co.*,
   253 N.Y. 159 (1930) ..................................................................... 11, 12

*Randi A.J. v. Long Is. Surgi-Center*,
   46 A.D.3d 74 (2d Dep't 2007) ............................................................14

*Smith v. Wade*,
   461 U.S. 30 (1983) ..............................................................................14

*Stoian v. Reed*,
   66 A.D.3d 1278 (3d Dep't 2009) ........................................................12

*United States v. Olano*,
   507 U.S. 725 (1993) ............................................................................24

*Wilner v. Allstate Ins. Co.*,
   71 A.D.3d 155 (2d Dep't 2010) ..........................................................16

*Wilson v. Car Land Diagnostics Ctr., Inc.*, 99-cv-9570,
   2001 U.S. Dist. LEXIS 19760 (S.D.N.Y. Nov. 15, 2001) ............................ 20, 21

*Wood v. Maguire Auto, LLC*, 09-cv-0640,
   2011 U.S. Dist. LEXIS 109293 (N.D.N.Y. Sep. 26, 2011),
   *aff'd*, 11-4497-cv, 2013 U.S. App. LEXIS 1835 (2d Cir. Jan. 28, 2013) ...........17

## Statutes

New York General Business Law § 349...................................... 1, 16, 17, 20, 22, 23

New York General Obligations Law § 15-108....................................................1, 17

## Rules

Fed R. Evid. 405 ....................................................................................5, 6

Fed. R. Civ. P. 42(a) .................................................................................2

Fed. R. Civ. P. 50 ...................................................................................23

Fed. R. Civ. P. 50(a)..............................................................................23

Fed. R. Civ. P. 50(b) ..............................................................................23

Fed. R. Evid. 404 ..................................................................................5, 6

## Preliminary Statement

The plaintiffs' brief begins with a completely inaccurate factual assertion. No plaintiff purchased anything from Yaron Hershco. The seller in each transaction was either United Homes, LLC, United Property Group, LLC, or Galit Network, LLC (collectively "UH Appellants"). This is a further attempt by the plaintiffs to misdirect and muddle the key issues that forms the crux of this appeal. This misrepresentation of such a basic undisputed fact casts a pall over the plaintiffs' entire argument, which largely misses both of the factual and legal points crucial to this appeal. For instance, as set forth more fully below, they offer no authority or support for allowing the prejudicial consolidation; for neglecting the legal prohibitions against allowing a separate conspiracy claim, ignoring the specific merger clauses, permitting separate punitive damages under New York General Business Law § 349, or allocating offsets under New York General Obligations Law § 15-108; or for sustaining verdicts based on the complete dearth of evidence.

## Argument

### 1.    Consolidation Prejudiced the Defendants, and the District Court did not Even Balance that Prejudice with Effective Curative Instructions

The District Court's findings that supported the consolidation order, as the plaintiffs expressed in their brief, looked only to the complaint's allegations, not to

any factual findings. Without evidence or acknowledgment, the plaintiffs simply take their complaint's allegations, washed through the District Court's consolidation decision that accepted those allegations at face value, and present them now as if they were indisputable facts. But the plaintiffs' allegations and conclusions do not address the issues that the District Court should necessarily have considered on the consolidation motion. The plaintiffs do little more than parrot the District Court's decision without any independent arguments or supporting case law. The District Court was wrong, and the plaintiffs offer nothing to validate its decision.

The plaintiffs point to *Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir.), *cert. den.*, 498 U.S. 920 (1990), and *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985), for the proposition that the District Court has discretion to consolidate under FED. R. CIV. P. 42(a). But the plaintiffs ignore the balancing measures that those decisions require, which the District Court ignored here. "Considerations of convenience and economy ***must yield to a paramount concern*** for a fair and impartial trial." *Johnson v. Celotex Corp.*, 899 F.2d at 1285.

*Johnson* and *Hendrix* do not support consolidation in this case. *Johnson* involved consolidation of two asbestos cases, where the plaintiffs in both cases worked at the same place. *Johnson v. Celotex Corp.*, 899 F.2d at 1283. *Hendrix* involved forty-four asbestosis claims, and all of the injured plaintiffs worked as

- 2 -

insulators out of the same union hall.  *Hendrix v. Raybestos-Manhattan*, 776 F.2d at 1495-96.  Both cases involved personal injury claims based on common exposures resulting in similar injuries.  More importantly, both cases involved the largest mass tort in the history of our country's judiciary, in which Courts routinely consolidate cases given the massive number of filings that clog the Courts' dockets.  But the cases at bar were much different.  Even accepting the plaintiffs' false contention that they suffered similar "injuries," they cannot dispute that their claims arose from separate transactions involving separate properties, different sellers, and purchasers, each of whom had their own unique expectations and rationale for purchasing such properties.  The plaintiffs cannot say that their injuries resulted from the same causative event, and so these cases do not apply.

Both *Johnson* and *Hendrix* pointed to cautionary jury instructions as a means to ameliorate consolidation's prejudicial impact.  *Johnson v. Celotex Corp.*, 899 F.2d at 1285; *Hendrix v. Raybestos-Manhattan*, 776 F.2d at 1495.  The court in *Hendrix* took the extra precaution of providing each juror with a notebook, tabbed for each plaintiff, so each juror could take notes about the evidence.  *Hendrix v. Raybestos-Manhattan*, 776 F.2d at 1496.  At bar, the District Court eschewed protective measures like these.

The plaintiffs point to the jury instructions as balancing this prejudice, but as the UH Appellants demonstrated in their initial brief, the inadequate jury verdict

- 3 -

sheets at bar could not defeat the prejudice.  As shown, the District Court's "cautionary" instructions only amplified that prejudice.  Although the District Court promised, in its order consolidating the case for trial, to provide cautionary instructions, in the end the District Court not only neglected that commitment but actually used instructions that exacerbated the prejudice.

The plaintiffs point to one part of the instructions where the District Court admonished the jury that "Each plaintiff and defendant is entitled to separate consideration" (Plaintiffs' Brief, p. 17, quoting A-4715- A-4716), but they ignore the later instructions that contradicted and overwhelmed that statement.  As the UH Appellants noted in their initial brief, the District Court told the jury "*__a__* misrepresentation or *__a__* material omission of fact" was sufficient "for the ***plaintiffs*** to prevail on their claims."  Trial Tr. Vol. XVI, 15:10-12 (A-4798) (emphasis added).  The plaintiffs offer no explanation for this prejudicial instruction that only exacerbated the prejudice from consolidation.

And regardless, even proper curative instructions do not erase prejudice flowing from consolidation.  Rather, guarding against prejudice must come before convenience and economy, such that "considerations of convenience and economy some times has to ***yield to the paramount*** concern for a fair and impartial trial." *Dashnaw v. Usen*, 05-CV-1592, 2006 U.S. Dist. LEXIS 41498, 7 (N.D.N.Y. Jun. 21, 2006.  *Dashnaw* involved two sexual harassment claims, where both plaintiffs

worked for the same employer.  Despite similar experiences and employer responses, the claims involved different persons who allegedly harassed the plaintiffs and different legal theories, and the complaints arose "out of an independent set of facts with no overlapping features other than the nature of the cause being pursued." *Id*. at 12.  The court, in denying consolidation, rejected curative instructions as a magic balm, concluding that consolidation would not only "create substantial prejudice and confusion but may imperil each defendant's 'cause' and create instead an unfair and partial trial." *Id*. at 12.  The court also reasoned that allowing the jury to hear both stories threatened to "bolster" one plaintiff's claim, finding that such "bootstrapping" could cause prejudice.  The court rejected "frequent curative instructions" as a magic balm.  Thus the District Court at bar subjected the UH Appellants to the very prejudice the *Dashnaw* court warned about, in the process refusing to accord prejudice the proper heavy weight it should carry such that "convenience and economy ***must*** yield to a ***paramount*** concern for a fair and impartial trial." *Debruyne v. National Semiconductor Corp. (In re Repetitive Stress Injury Litig.)*, 11 F.3d 368, 373 (2d Cir. 1993)(emphasis added).

In another effort at misdirection, the plaintiffs misconstrue the UH Appellants' arguments concerning FED. R. EVID. 404 and 405.  These evidentiary rules do not supply the grounds for UH Appellants' argument challenging

consolidation but rather identify the law's recognition of the prejudice — which the District Court allowed to fester — from exposing a party to a nonparty's allegations.  This is the exact prejudice that consolidation caused.  Requiring a defendant to respond to one plaintiff's allegations is fair, but requiring that defendant to respond to that same plaintiff's claim while allowing that plaintiff to introduce evidence of other claims creates an unfair burden.  It does not require any great leap of reasoning to see this burden's unfairness, because the law already embodies that understanding in these rules of evidence.  Contrary to the plaintiffs' arguments, similar allegations against sibling companies do not create common questions of fact.

Even accepting the plaintiffs' allegations that they shared *similar* experiences, there was absolutely no evidence or even an allegation that any of them shared the *same* experience.  That is what distinguishes this case from *Johnson v. Celotex* or *Hendrix v. Raybestos-Manhattan* — where the plaintiffs experienced the *same* exposure — and brings it under *Dashnaw* or the principal behind FED. R. EVID. 404 and 405, which recognized the improperly prejudicial effect of allowing a plaintiff to establish a wrong based on the defendant's conduct toward another.  That is why consolidation does not require a balance between prejudice and convenience but rather requires prejudice to outweigh convenience, and why the Court should reverse the consolidation order.

2.    **The Plaintiffs Offer No Authority Supporting a Separate Cause of Action Sounding in Civil Conspiracy**

The plaintiffs point to no case law supporting their *ipse dixit* contention that conspiracy can stand as a separate cause of action. The plaintiffs challenge the UH Appellants' reliance on the *Repetitive Stress Injury Litigation* case contending the District Court's findings and conclusions distinguish this case from *Repetitive Stress*. While the UH Appellants demonstrated the weakness and inconsistencies in the District Court's findings, the plaintiffs make no effort to vindicate them. They just stand on their conclusion.

The plaintiffs contend both "fact and law" support the jury's verdict on their separate civil conspiracy claim, but they do not identify one case behind their argument other than the District Court's opinions. Plaintiffs present nothing to displace the unavoidable rule that, "under New York law, conspiracy, *per se*, is not a tort." *Grove Press, Inc., v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981).

The plaintiffs completely misconstrue and mischaracterize the UH Appellants' conspiracy argument. The plaintiffs veer off, arguing about whether the record contains sufficient facts to demonstrate the elements of this nonexistent claim. But UH Appellants' point is that no such cause of action can exist, evidence or no evidence, not the quantum of evidence behind the claim, and thus the separate conspiracy count should be dismissed.

- 7 -

### 3.    The Plaintiffs Offer No Authority Disputing the Merger Clauses' Effectiveness

The plaintiffs also present no authority offering any reason to distinguish the specific merger clauses at bar from the specific merger clause at issue in *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959).  The plaintiffs attack the New York Court of Appeals decision in *Danann Realty* by pointing to the same court's decision from 65 years earlier in *Bridger v. Goldsmith*, 143 N.Y. 424 (1894), but they overlook the fatal flaw in this reliance:  The *Danann Realty* court explicitly distinguished *Bridger*, finding that the ***specific*** merger clause, "which declares that the parties to the agreement do not rely on specific representations not embodied in the contract, excludes this case from the scope of … *Bridger*," among other cases. *Danann Realty*, 5 N.Y.2d at 321.

The plaintiffs cannot distinguish the specific merger clause at bar from the operative clause in *Danann Realty*.  Both the clauses at bar and in *Danann Realty* share:

- The buyer's acknowledgement that he or she has inspected the premises.

- The buyer's acknowledgement that he or she is relying solely on his or her own inspection.

- The buyer's agreement to accept the property "as is," using that phrase verbatim.

- 8 -

- The buyer's acknowledgement that he or she is not relying on any representation from the seller concerning the property's physical condition.

The clause in *Danann Realty* read:

> The Purchaser has examined the premises agreed to be sold and is ***familiar with the physical condition*** thereof. The Seller ***has not made and does not make any representations as to the physical condition***, rents, leases, expenses, operation or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that ***no such representations have been made***, and the Purchaser further acknowledges that it ***has inspected the premises*** and agrees to take the premises ***"as is"*** * * * It is understood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, and that the same is entered into after ***full investigation, neither party relying upon any statement or representation, not embodied in this contract, made by the other.*** The Purchaser ***has inspected the buildings*** standing on said premises and is thoroughly acquainted with their condition.

*Danann Realty*, 5 N.Y.2d at 320 (emphasis added).

In comparison, the clause at issue in this case states:

> 12.    Condition of Property.  Purchaser acknowledges and represents that Purchaser is ***fully aware of the physical condition and state of repair*** of the Premises and of all other property included in this sale, ***based on Purchaser's own inspection and investigation*** thereof,

- 9 -

and Purchaser is entering into this contract ***based solely upon such inspection and investigation*** and ***not upon any information***, data, statements, representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the premises, the other property included in the sale, ***given or made by Seller*** or its representatives, and shall accept the same ***"as is"*** in their present condition and state of repair subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchase[r] and its authorized representatives shall have the right, at reasonable times upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises within forty eight (48) hours before Closing.

A-5720, Plaintiffs' Sales Contracts, Miscellaneous, § 12 entitled "Condition of the Property" (emphasis added).

The District Court should have enforced the merger clauses at bar. The plaintiffs should not be allowed to complain about the properties' conditions after agreeing they had inspected them to their own satisfaction and found them acceptable. The merger clauses thus present a purely legal bar to any fraud claims based on the properties' conditions, requiring reversal.

**4.    The Plaintiffs did not Identify Factual Misstatements Supporting their Fraud Claim or Providing Any Reason to Disregard the *Caveat Emptor* Doctrine**

The plaintiffs contend that the UH Appellants committed fraud by active concealment, but where is the special relationship necessary for such a claim?  For that matter, where is the misrepresentation outside the scope of a contractual promise necessary for a tort claim under *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382 (1987)?  Where is the evidence of any statement that was anything other than a contractual promise or an opinion as to quality?

The plaintiffs challenge the UH Appellants' fraud arguments, but where is the evidence that the plaintiffs were tricked?  Where is the evidence they were not well-versed in real estate transactions?  Where is the evidence they had no opportunity to get independent appraisals?  Where did any statement attributed to the UH Appellants cross the line from puffery to factual misstatement?  The UH Appellants identified the undisputed contrary evidence in its appellants' brief, but the plaintiffs do not address any of these references and do not point to any contrary evidence contravening this proof.  *Danann Realty* does not require the plaintiffs to admit that they read the merger clauses for them to be enforceable. The plaintiffs signed their contracts, and under *Pimpinello v. Swift & Co.*, 253 N.Y. 159 (1930), they are conclusively bound to the terms they agreed to.  *See also*, *Aylaian v. Town of Huntington*, 459 Fed. Appx. 25 (2d Cir. 2012); *Martinez Tapia*

- 11 -

*v. Banque Indosuez*, 99-7170, 1999 U.S. App. LEXIS 29260, 5-6 (2d Cir. Nov. 3, 1999); *Oquendo v. Federal Reserve Bank*, 98 F.2d 708, 710 (2d Cir.), *cert. den*., 305 U.S. 656 (1938).  The plaintiffs do not identify any case where a New York court declines to apply *Pimpinello* or, since *Danann Realty*, to enforce a specific merger clause.

The plaintiffs cite *Bethka v. Jensen*, 250 A.D.2d 887 (3d Dep't 1998), for the proposition that *caveat emptor* does not apply in a case of active concealment, but *Bethka* involved **factual** misrepresentation not found here.  *Bethka* involved a real estate transaction where the seller told the buyer that the property was connected to "Town water and sewer" when, in fact, that was not true; rather the property was part of a development system, and the buyer faced an assessment to bring the property into the town system.  *Bethka* thus involved a false statement of fact — about the water and sewer connection — that cannot be confused with a statement of opinion about a property's condition that was easily discoverable and which none of the plaintiffs were prevented from doing, as each acknowledged.

The plaintiffs also rely on *Stoian v. Reed*, 66 A.D.3d 1278 (3d Dep't 2009), but that case actually supports the UH Appellants' position.  The court in *Stoian* dismissed a buyer's fraud claim because, like the situation at bar, the plaintiffs lacked sufficient evidence to support their steep burden to establish fraud or even to avoid summary judgment.  Like the case at bar, *Stoian* involved a real estate

transaction, and the property suffered certain deficiencies in condition.  The testimony demonstrated that the defendant-seller said the property was in "perfect shape," but did not show that the seller crossed the line from this type of puffed opinion to a statement of fact or otherwise prevented the buyers from inspecting the property and reaching their own conclusions.  The case is thus similar to the situation at bar, where the seller's statements were at worst exaggerated puffery but never crossed the line into the realm of facts.

Plaintiffs also wrongly rely on *Jablonski v. Rapalje*, 14 A.D.3d 484 (2d Dep't 2005).  In that case, the plaintiff-buyer successfully deflected the defendant-seller's summary judgment motion by submitting evidence of active concealment concerning a bat infestation in the building's attic.  The evidence suggested the sellers showed the house during the season when the bats were not present, that they hurriedly cleaned bat guano from the attic just before a building inspection, and that they laid mothballs to cover the smell.  *Id*. at 486-87.  This testimony thus demonstrates action — scheduling, cleaning, and deodorizing — not present here.  Even accepting the plaintiffs' contentions that the properties were substandard, they introduced no evidence of action, necessary for "active" concealment, hiding the condition from the plaintiffs or otherwise denying any buyer the opportunity to inspect the premises or hire an independent inspector.

**5.      The Evidence did not Support the Punitive Damage Awards**

**A.      *The Plaintiffs Offer No Authority Disputing the Appellants' Contention that Punitive Damages Requires Clear and Convincing Proof of Malice or Ill Will***

The plaintiffs dispute the UH Appellants' contentions concerning punitive damages — that an award requires clear and convincing evidence of actual malice — but they offer no authority contradicting the UH Appellant's arguments. As demonstrated in the UH Appellants' initial brief, applicable case law requires clear and convincing evidence for a punitive damage award (*Randi A.J. v. Long Is. Surgi-Center*, 46 A.D.3d 74, 86 (2d Dep't 2007)) demonstrating "actual malicious intent" (*Smith v. Wade*, 461 U.S. 30, 43 n.9 (1983)) and "hatred, ill will, or spite." *Light v. W2001 Metro. Hotel Realty LLC*, 10 Civ. 4449, 2011 U.S. Dist. LEXIS 59189, 9 (S.D.N.Y. Jun. 2, 2011).  The plaintiffs offer no authority challenging these standards for finding fraud, and the lack of clear and convincing evidence of malice or ill will, as noted below, warrants reversal of the punitive damage awards.

**B.      *The Plaintiffs Identify No Clear and Convincing Proof of Malice or Ill Will***

The UH Appellants described in their initial brief, in considerable detail (Point 5(C)), why the evidence upon which the plaintiffs relied to establish fraud did not, as a matter of law, sufficiently establish the claim.  The categories of evidence the plaintiffs pointed to involved the UH Appellants' contractual promises, the properties' values, the plaintiffs' ability to repay mortgage loans, and

- 14 -

the plaintiffs' opportunities to inspect the properties before closing. These were the representations the plaintiffs identified as fraudulent, and the UH Appellants addressed them in their initial brief and explained why they could not support a fraud verdict.

In addressing the contractual promises, the plaintiffs fall back on the District Court's findings but do not identify any promise that is anything other than contractual. In section II(C) (pp. 25-27) of their brief they identify, as supporting their claim, the defendants' promises to "fully renovate" the properties and to help find tenants, and their post-sale promises to repair. These promises are contractual at best and thus cannot support a fraud claim (*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011)), and a post-sale promise to repair could not possibly have induced an already-completed purchase.

The plaintiffs did not respond to the substance of the other points concerning values, ability to pay, and opportunities to inspect in their responsive brief. They announce with their sub-point heading for their section II(D)(2) (pp. 28-32) their conclusory contention that there was sufficient clear and convincing evidence to establish fraud, but they do not address these points. Instead they devote the entire point to pierce-the-veil arguments, seeking to tag Mr. Hershco with the fraud allegations, completely ignoring the preliminary question, whether the conduct could constitute fraud against anyone. The UH Appellants established in their

- 15 -

initial brief that these points — value, affordability and repair promises — could not possibly support a fraud claim, and the plaintiffs ignore these legal arguments. There was thus no basis for punitive damages, and they should be stricken.

### 6.   Punitive Damages were not Available Under N.Y. General Business Law § 349

Contrary to the plaintiffs' suggestion, the UH Appellants did not argue that punitive damages were never allowed under N.Y. GEN. BUS. L. § 349, but rather simply that the statute does not allow punitive damages if the compensatory damages equal or exceed $1,000.  The plaintiffs challenge this contention, relying on *Wilner v. Allstate Ins. Co*., 71 A.D.3d 155 (2d Dep't 2010), but that decision involved a pre-answer motion to dismiss for failure to state a claim.  The court thus had no compensatory damage award before it and therefore had no reason to consider whether punitive damages were available in that case.  The courts in *Wilner v. Allstate* and in *Latiuk v. Faber Constr. Co*., 269 A.D.2d 820 (4th Dep't 2000), which the plaintiffs also reference, did not face an actual compensatory award under section 349, and thus neither court ever reached the issue at hand, whether the statute allows punitive damages if the compensatory award equals or exceeds $1,000.

The plaintiffs try to distinguish *Hart v. Moore*, 155 Misc. 2d 203 (1992), on the irrelevant ground that the case involved a third-party beneficiary's claim under

an insurance policy.  The decision looked to whether an insurance company would be subject to a claim under section 349, but once past that point the court in *Hart* did not differentiate the available statutory remedies based on the defendant's business.  The distinction is meaningless, and the plaintiffs have identified no authority challenging the UH Appellants' underlying contention, that "punitive damages may be awarded only when the total award, together with punitive damages, does not exceed $1,000."  *Wood v. Maguire Auto, LLC*, 09-cv-0640, 2011 U.S. Dist. LEXIS 109293, 17 (N.D.N.Y. Sep. 26, 2011), *aff'd*, 11-4497-cv, 2013 U.S. App. LEXIS 1835 (2d Cir. Jan. 28, 2013).  As a plain legal matter, the additional punitive damages under GEN. BUS. L. § 349 were improper and should be stricken.

**7.    The Plaintiffs Identified No Authority for Allocating the Offset under General Obligations Law 15-108 Based on the Theory of Recovery**

As with many other points as noted, the plaintiffs offer no authority supporting their arguments concerning offset beyond the District Court's opinion and their *ipse dixit*.  They offer no authority challenging the UH Appellants' contentions that:

- The proper offset metric under N.Y. GEN. OBLIG. L. § 15-108 reduces a non-settling tortfeasor's liability by the greater of (1) the amount of the

settling tortfeasor's settlement; or (2) the settling tortfeasor's equitable share of fault.

- Where several tortfeasors settle, the court aggregates settlements. *In re New York City Asbestos Litig.*, 82 N.Y.2d 342 (1993).

- The statute applies to any state law tort claim (*Chubb & Son Inc. v. Kelleher*, 2010 U.S. Dist. LEXIS 141842, n.12 (E.D.N.Y. 92 CV 4484 Oct. 22, 2010); *Lukaszuk v. Sudeen*, 2007 U.S. Dist. LEXIS 95919 (E.D.N.Y. CV 02-5143 Nov. 27, 2007); and

- As long as the judgment and the settlement compensated the same injuries, the non-settling defendant is entitled to an offset under section 15-108 ***without regard to the theory*** supporting the claims or to whom the claim is directed. *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15-16 (2d Cir. 1988), *cert. den.*, 490 U.S. 1006 (1989).

The District Court's conclusion, which the plaintiffs raise in their brief, reducing the available offset based on the claims' state or federal-law basis, thus finds no purchase. The only relevant issue is whether the settlement and the verdict compensated the same injury, not what caused that injury. In *Bernstein v. Antar (In re Crazy Eddie Sec. Litig.)*, 948 F. Supp. 1154 (E.D.N.Y. 1995), the court applied this "same injury" standard when applying a settlement for state-law

negligence claims to reduce an award under federal securities laws, because "the critical inquiry is the harm caused by the settling defendants rather that the difference in theories of liability giving rise to the claims against them." *Id*. at 1168. The same situation existed here. Although the settlements covered the state-law claims and the federal discrimination claims (which the jury later rejected), the plaintiffs in presenting their damages did not distinguish amongst theories in alleging causative links between the theories and damages. The District Court thus erred in allocating the settlements amongst legal theories and refusing to apply the entire settlement amounts as offsets, including the value of the modifications made to the mortgages in exchange for the settlements.

## 8.    The Attorneys' Fee Award was Disproportionate and Unreasonable.

The plaintiffs ignore the defendants' verdict on their central discrimination claims in their defense of the District Court's finding that the plaintiffs prevailed on "most" of their claims. Pl. Brief 54. Those failed discrimination claims were at the crux of their complaint and was their focal point during trial. The plaintiffs acknowledged that it was appropriate to reduce their hours for any attorneys' fee award "based on the degree of success obtained in the action." *Id*. (internal quotations omitted). But the plaintiffs cannot say that they obtained a high degree of success at trial, as they lost their central discrimination claims, and the jury only awarded $1.1 million in response to their request for $6 million. The District

Court erred in awarding fees for work directed to the failed discrimination claims, and therefore the District Court's attorneys' fee award is excessive and unsupported.

In addressing the attorneys' fee award, the plaintiffs do nothing more than reiterate the District Court's analysis and calculations. The plaintiffs point to other cases where courts awarded attorneys' fees that were disproportionate when compared to the jury's award, but the amount and difference awarded at bar eclipses the amounts awarded in those cases. Plaintiffs suggest that the amount in controversy in a suit under N.Y. Gen. Bus. L. § 349 will often be small and "insufficient to attract competent counsel." *Wilson v. Car Land Diagnostics Ctr., Inc.*, 99-cv-9570, 2001 U.S. Dist. LEXIS 19760, 8 (S.D.N.Y. Nov. 15, 2001). The court in *Wilson* awarded only $2,000 in damages but awarded $10,000 in attorney's fees. The plaintiffs point to the fact that the fee award exceeding the jury award in that case was "certainly not excessive." *Id.* But there is no comparison to awarding a $10,000 attorneys' fee award and an attorneys' fee award that exceeds the jury verdict by more than $1.2 million. Furthermore, *Wilson* is an exception to the general view followed in this circuit: "[An] award of fees in excess of the amount involved in a litigation would normally appear to be unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d

Cir. 1987); *citing, Colon v. Automatic Retailers Assoc. Service, Inc*., 74 Misc. 2d
478 (Sup. Ct. N.Y. County 1972).

The plaintiffs contend that an attorneys' fee award under section 349 need
not be proportional to the proven damages (Pl. Brief p. 55), but the court in *Diaz v.*
*Paragon Motors of Woodside, Inc.*, CV-03-6466, 2007 U.S. Dist. LEXIS 73230
(E.D.N.Y. Sep. 28, 2007), in awarding $67,000 in attorney fees on a $9,000
verdict, reasoned, "an award of attorney's fees that is substantially larger than the
verdict may be unusual, but in this case it is certainly not excessive." Id. at 28.
But unlike *Diaz*, the result at bar was both unusual and clearly excessive. Thus,
contrary to plaintiffs and the former attorney's reliance on *Diaz* and *Wilson*, they
both involved small dollar differentials that do not even approach the result at bar.

In addition, contrary to both the plaintiffs and their former attorneys'
arguments, the UH Appellants identified several cases reciting the long-standing
authority rule that is a staple in attorneys' fee awards. *Arbor Hill Concerned*
*Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir.
2008), *citing Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.
1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92-93,
96 (1989).

This Circuit has held that the *nature* of the professional relationship with the
client and the attorney's *ability* are two of the most important factors to consider

when assessing the attorneys' fee award. *Konits v. Valley Stream Cent. High Sch. Dist.*, 350 Fed. Appx. 501, 503 (2d Cir. 2009) (emphasis added). The District Court did not allow the UH Appellants the opportunity to explore the facts that support or alleviate these factors and rejected their request for additional discovery regarding the plaintiffs' relationship with their former attorneys. If the plaintiffs terminated the representation because of conduct, poor representation, or the inadequate abilities, then those facts would substantially support reducing the fee award. The District Court's refusal to allow this discovery deprived the UH Appellants of the ability to bring these important factors to the court's attention. Accordingly, the Court should reverse the attorneys' fee award.

**9.    The Defendants did not Waive their Appellate Issues**

At several points the plaintiffs contend the UH Appellants waived certain issues for appeal, namely the merger clauses (Plaintiffs' Brief, part II(A), pp. 22-23), fraud (Plaintiffs' Brief, part II(D)(1), pp. 27-28), the claims under N.Y. General Business Law § 349 (Plaintiffs' Brief, part V, p. 42-43), and punitive damages under General Business Law § 349 (Plaintiffs' Brief, part VI, p. 43). The plaintiffs wear this waiver argument like an emperor's suit, hoping the Court will ignore these points' merits and not notice the grave injustice that will result if it does. The argument fails for several reasons: these points raise legal issues, not the

sufficiency of evidence; the legal points were adequately raised in the defendants'

motions under Fed. R. Civ. P. 50; and prejudice.

First, the requirement for a pre-verdict motion under Fed. R. Civ. P. 50(a),

renewed with a post-verdict motion under Fed. R. Civ. P. 50(b), as a prerequisite

for appeal, goes to the issue of sufficiency of evidence.  *Pahuta v. Massey-*

*Ferguson, Inc*., 170 F.3d 125, 129 (2d Cir. 1999).  The UH Defendants properly

preserved their objections on these grounds in their oral Rule 50(a) (A-4281-

A-4285) and 50(b) (Docket No. 619) motions and any assertion to the contrary is

wrong.

Furthermore, the UH Defendants adequately raised all of these issues in the

District Court.  The defendants addressed the merger clauses in part II of the

memorandum in support of their Rule 50(b) motion (Docket No. 620, pp. 10-13);

the insufficient of evidence fraud in both their Rule 50(a) (A-4283) and Rule 50(b)

(Docket No. 620, pp. 14-20) motions; General Business Law § 349 subsumed in

the fraud discussion in the Rule 50(a) motion (A-4283) and in the memorandum in

support of their Rule 50(b) motion (Docket No. 620, pp. 5-6, 27-29); and the

punitive damages available under section 349 in the Rule 50(b) motion's

memorandum of law (Docket No. 620, pp. 31-32).

Finally, even if the Court questions the sufficiency with which the UH

Appellants preserved these issues for appeals, the Court should consider them in

any event as they constitute plain error that affects substantial rights. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997), *citing United States v. Olano*, 507 U.S. 725. 732 (1993). The errors highlighted above are plain from the undisputed contract language (as to the merger clauses) or the language of section 349, and they affect substantial rights as they constitute clear legal principles that mean the difference between a dismissal and a plaintiffs' verdict.

## Conclusion

For the foregoing reasons, the judgment should be reversed, and the matter dismissed or, in the alternative, remanded to the District Court for new, separate trials.

Dated:      Purchase, New York
            May 9, 2013

                              Respectfully submitted

                              LITTLETON JOYCE
                              UGHETTA PARK & KELLY LLP


                              By:___/s/Bryon L. Friedman____
                                    Bryon L. Friedman, Esq.
                              The Centre at Purchase
                              4 Manhattanville Road, Suite 202
                              Purchase, New York  10577
                              (914) 417-3400
                              File no. 00147.00001

                              *Attorneys for Appellants-Defendants
                              United Homes, LLC, United Property
                              Group, LLC, and Galit Network, LLC*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in <u>14-Point Times New Roman</u> proportional font and contains 5,401 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: New York, New York
      May 9, 2013

/s/ Bryon L. Friedman
LITTLETON JOYCE UGHETTA PARK
  & KELLY LLP
*Attorneys for Defendants-Appellants*
  *United Property Group, LLC, United*
  *Homes, LLC and Galit Network, LLC*
The Center at Purchasep
Four Manhattanville Road, Suite 202
Purchase, New York 10577
(914) 417-3400