# 12-2909-cv(L),

## 12-2912-cv(CON), 12-3619-cv(CON), 12-3621-cv(CON)

# United States Court of Appeals
## for the
# Second Circuit

——— ◆❙◆ ———

SANDRA C. BARKLEY, aka SANDRA C. BARKLAY,

*Plaintiff-Counter Defendant-Cross Defendant-Appellee,*

– v. –

OLYMPIA MORTGAGE COMPANY,

*Defendant-Counter Claimant-Cross Defendant,*

*(For Continuation of Caption See Reverse Side of Cover)*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## CORRECTED REPLY BRIEF FOR DEFENDANT-CROSS DEFENDANT-CROSS CLAIMANT-APPELLANT YARON HERSHCO

OVED & OVED LLP
*Attorneys for Defendant-Cross
    Defendant-Cross Claimant-Appellant
    Yaron Hershco*
401 Greenwich Street
New York, New York 10013
(212) 226-2376

THOMAS MESSINA, DLJ MORTGAGE CAPITAL LLC,

*Defendants-Cross Defendants-Cross Claimants*,

ALLIANCE MORTGAGE CORPORATION, dba Everyhome Mortgage Company,
WILSHIRE CREDIT CORPORATION, FEDERAL NATIONAL MORTGAGE
ASSOCIATION, XYZ CORPORATION (Said name being fictitious, it being the
intention of Plaintiff to designate any corporation having a legal interest in Plaintiff's
mortgages), JP MORGAN CHASE BANK, as Trustee for the Home Equity Trust Series
2003-3 substituted as deft for Wilshire Credit Corporation and XYZ Corporation,
MICHAEL B. CHEATHAM, CREDIT SUISSE FIRST BOSTON LLC, CREDIT
SUISSE FIRST BOSTON MORTGAGE SECURITIES, INC., BENJAMIN TURNER,

*Defendants-Cross Defendants,*

MICHAEL MASCIALE, CERTILMAN BALIN ADLER & HYMAN, LLP,

*Defendants,*

UNITED PROPERTY GROUP, LLC, UNITED HOMES, LLC,
GALIT NETWORK, LLC, YARON HERSHCO,

*Defendants-Cross Defendants-Cross Claimants-Appellants.*

# **TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ......................................................................................4

I.    Appellees' Fraud Claims Against
Hershco Must be Dismissed as a Matter of Law .............................................4

    A.    Legal Standard for Owner and Officer Liability ...................................6

    B.    The Evidence Adduced At Trial
and Cited in the Opposition Brief is Insufficient
as a Matter of Law to Hold Hershco Personally Liable .......................9

    C.    Appellees Blatantly Mischaracterize the Evidence ............................14

II.    Hershco Cannot Be Liable for Civil Conspiracy
and Unfair and Deceptive Trade Practices Because
no Evidence was Adduced that Hershco Participated
in or Had Actual Knowledge of any Misrepresentations or Omissions ........16

III.    Appellees Failed to Present Sufficient
Evidence to Support Finding Hershco
Liable for Misconduct of the United Homes Entities ....................................18

    A.    No Evidence was Presented at Trial That the
United Homes Entities Operated as a Dummy for Hershco ...............18

    B.    There is No Evidence That Hershco
Used the United Homes Entities to Commit Fraud ...........................22

IV.    Hershco Did Not Waive Any Appellate Arguments ......................................24

CONCLUSION ...................................................................................29

i

# TABLE OF AUTHORITIES

**CASES**                                                            **PAGES**

*Abu Dhabi Comm. Bank v. Morgan Stanley*,
   888 F. Supp. 2d 431 (S.D.N.Y. 2012) ............................................................. 7, 13

*Barkley v. United Homes, LLC*,
   No. 04-cv-00875, 2012 U.S. Dist. LEXIS 85793
   (E.D.N.Y. June 20, 2012) ........................................................................28

*Century Pac, Inc. v. Hilton Hotels Corp.*,
   528 F. Supp. 2d 206 (S.D.N.Y. 2007) ....................................................9

*Ecuador Importada-Exportadora Cia., Ltda. v. ITF (Overseas) Corp.*,
   94 A.D. 2d 113 (1st Dep't 1983) ............................................................7

*Eurycleia Partners, L.P. v. Seward & Kissel, LLP*,
   12 N.Y.3d 553 (N.Y. 2010) .............................................................. 7-11

*Freeman v. Complex Computing Co., Inc.*,
   119 F.3d 1044 (2d Cir. 1997) ...............................................................22

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
   136 F.3d 276 (2d Cir. 1998) .................................................................25

*Gartner v. Snyder*,
   607 F.2d 582 (2d Cir. 1979) ....................................................... *passim*

*Gibeau v. Nellis*,
   18 F.3d 107 (2d Cir. 1994) ...................................................................28

*Gronowski v. Spencer*,
   424 F.3d 285 (2d Cir. 2005) ........................................................... 28-29

*Harding v. Naseman*,
   377 Fed. Appx. 48 (2d Cir. 2010) ..........................................................9

*High Tides, LLC v. DeMichele*,
   88 A.D.3d 954 (2d Dep't 2009) ...............................................................8

*In re Bristol Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) ....................................................6

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ................................................................7

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ....................................................8

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003) ....................................................8

*Kusens v. Pascal Co., Inc.*,
   448 F.3d 349 (6th Cir. 2006) ................................................................25

*Marine Midland Bank v. John E. Russo Produce Co.*,
   50 N.Y.2d 31 (N.Y. 1980) ......................................................................6

*Mateo v. Senterfit*,
   82 A.D.3d 515 (1st Dep't 2011) ....................................................... 7, 11

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir. 2000) ................................................................17

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009) ....................................................17

*People v. Nat'l Home Prot., Inc.*,
   No. 400431/09, 2009 N.Y. Misc. LEXIS
   3667 (N.Y. Sup. Ct. N.Y. Cty. Dec. 8, 2009)............................... 8-9, 12

*Peterson v. Vallenzano*,
   No. 88-Civ.-5346, 1991 US Dist. LEXIS 180 (S.D.N.Y. Jan. 9, 1991)......... 18-19

*Port Chester Elec. Constr. Corp. v. Atlas*,
   40 N.Y.2d 652 (N.Y. 1976) ..................................................................18

iii

*Schenk v. Cont'l Coal Reserves, Ltd.*,
   No. 88-CV-146, 1990 U.S. Dist. LEXIS 13554 (S.D.N.Y. Oct. 11, 1990) ..........7

*SEC v. Espueles*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008) ..............................................................6, 8

*United States v. Funds Held ex rel Wetterer*,
   210 F.3d 96 (2d Cir. 2000) ...............................................................................18

*W. Union Co. v. Moneygram Payment Sys., Inc.,*
   626 F.3d 1361 (Fed. Cir. 2010) ........................................................................25

*Walkovsky v. Carlton*,
   18 N.Y.2d 414 (N.Y. 1967) ...................................................................... *passim*

*White v. Nat'l Home Prot., Inc.*,
   No. 09-Civ.-4070, 2010 U.S. Dist. LEXIS 40414 (S.D.N.Y. 2010) .............. 8, 12

*Williams v. Runyon*,
   130 F.3d 568 (3d Cir. 1997) ..............................................................................29

## STATUTES & RULES                              PAGES

Federal Rule of Civil Procedure, Rule 50…………………………………...*passim*

New York General Business Law § 349……………………………………16-17

## <u>PRELIMINARY STATEMENT</u>

In the Appellate Brief (the "App. Br."), Hershco established the propriety of granting his Appeal in its entirety because no evidence was adduced at trial, much less clear and convincing evidence, that Hershco either (1) participated in or had actual knowledge of a fraud against Appellees, or (2) used the United Homes Entities to conduct business in his personal capacity for personal rather than corporate ends.[1]  Appellees' opposition brief (the "Opp. Br.") simply confirms that this Appeal should be granted in full by offering no substantive opposition and instead misstating the trial record and ignoring the applicable law.

*First*, as detailed in Point I.A., *infra*, despite Appellees' gross mischaracterizations of the trial record, the <u>only</u> evidence pertaining to Hershco adduced at trial was that he engaged in a handful of ordinary business activities as the founder and owner of the United Homes Entities.  As a matter of well-established New York law, an individual cannot be held personally liable for a corporation's fraud solely because he owns and operates the company.  Rather, there must be clear and convincing evidence that the owner or officer <u>personally</u> participated in or had <u>actual</u> knowledge of the alleged fraudulent representations or omissions.  Moreover, the performance of regular business activities, including ministerial tasks like signing deeds of sale, is insufficient as matter of law to satisfy

---

[1] All capitalized terms used herein shall have the same meaning as in the App. Br.

this heightened standard without independent evidence of fraudulent intent. Accordingly, because the entire trial record contains nothing more than evidence that Hershco founded and owned the United Homes Entities and that he performed a handful of ordinary business activities in that capacity, and there is no evidence that Hershco knew of or participated in a single misrepresentation or omission with respect to Appellees, Appellees' fraud claim against Hershco should be dismissed as a matter of law.

*Second*, as detailed in Point I.B., *infra*, because Appellees are unable to show that there was sufficient evidence at trial to hold Hershco liable for fraud, Appellees resort to mischaracterizing the record. Beginning with its very first sentence, stating that Appellees "all purchased their homes from Yaron Hershco," the Opp. Br. is rife with broad sweeping statements that are flatly contradicted by the evidence cited for these propositions. For example, Appellees misrepresent that there was evidence at trial that Hershco participated in making misrepresentations and omissions to Appellees, that he testified to having "hands-on knowledge of and control over every aspect of the business" and "participat[ed] directly in obtaining financing for, acquiring, overseeing the construction work on, and reselling" Appellees homes. As illustrated below, these statements are wholly unsupported by the record. Moreover, the fact that Appellees must resort to such

dishonesty after years of discovery and a three week trial, just further underscores that there is no basis in the record to hold Hershco liable for fraud.

*Third*, as detailed in Point II, *infra*, because there is no evidence that Hershco knew of or participated in a fraud against Appellees, there was also no basis to hold Hershco liable for conspiracy to commit fraud or violating New York General Business Law § 349.  Accordingly, these claims must be dismissed as well.

*Fourth,* as detailed in Point III, *infra*, Appellees' opposition completely ignores New York's well-settled requirements for piercing the corporate veil so as to hold a company's owner personally liable for corporate obligations.  As demonstrated in the App. Br., even if Hershco operated the United Homes Entities as a single enterprise or corporate combine, long established New York law, promulgated by the New York Court of Appeals, precludes a finding that he be held personally liable for their debts because it is undisputed that there is no evidence that Hershco used the United Homes Entities to conduct business in his personal capacity for personal rather than corporate ends.  In fact, even Appellees' own expert's testimony confirms that no such evidence is in the record.  There was also no evidence adduced at trial to demonstrate that Hershco abused the corporate form to perpetrate a fraud, which constitutes a separate and independent basis to dismiss Appellees' corporate veil cause of action.

*Finally*, as detailed in Part IV, *infra*, not one of Hershco's appellate arguments are waived because Hershco raised each of them in both his Federal Rule 50(a) and 50(b) motions. In fact, the District Court, in its 50(b) decision, recognized that each of these arguments was preserved. In any event, even if Appellees' waiver arguments had merit (which they do not), well-settled law demonstrates that Appellees waived these arguments by omitting them from their opposition to Hershco's Rule 50(b) motion. Accordingly, Appellees' "waiver" arguments littered throughout the Opp. Br. are nothing but another attempt to divert the Court's attention from the dearth of evidence pertaining to Hershco at trial.

## **ARGUMENT**

## **I.**

### **APPELLEES' FRAUD CLAIMS AGAINST HERSHCO MUST BE DISMISSED AS A MATTER OF LAW**

As demonstrated in the App. Br., no evidence was adduced at trial that Hershco participated in or had actual knowledge of a fraud against any of the Appellees. In particular, it is <u>undisputed</u> that no evidence was adduced that Hershco:

- had any interaction with the other alleged conspirators in this case;

- made any statements or had any interaction with any of the Appellees before, during, or less than one year after the purchase of their homes;

- set offering prices for any of the Appellees' homes;

- oversaw or directed the renovations or repairs to any of the Appellees' homes;

- was consulted or informed of any of the details concerning the transactions whereby Appellees purchased their homes;

- created, approved, or had any knowledge of the United Homes' Entities advertisements that Appellees saw;

- attended any of the closings; or

- commingled his assets with United Homes Entities' assets or used the United Homes Entities to conduct business in his personal capacity.

(App. Br. 5-6.)  In opposition, Appellees do not, and cannot, identify <u>any</u> evidence that could support an inference that Hershco had actual knowledge of or participated in a fraud.  (Opp. Br. at 28-31.)  Rather than concede this undeniable fact, or address the well-settled law mandating dismissal of Appellees fraud claims, Appellees attempt to rewrite history by asserting broad sweeping allegations against Hershco that are not supported by the record, and by attempting to pass off evidence against other defendants as evidence against Hershco.   Yet, as demonstrated in Point I.A. and I.B. *infra*, the <u>only</u> evidence pertaining to Hershco that was adduced at trial was that he engaged in a handful of ordinary business activities as the founder and owner of the United Homes Entities, which are insufficient as matter of law to demonstrate that Hershco knowingly participated in or had actual knowledge of a fraud.  Moreover, as demonstrated, in Point I.C.

*Page 5*

*infra*, each of Appellees' assertions to the contrary is easily rebutted by the trial record.

## A.    <u>Legal Standard for Personal Liability for Owners and Officers</u>

An individual cannot be held personally liable for a corporation's fraud solely because that individual owns and controls the company. *Marine Midland Bank v. John E. Russo Produce Co.*, 50 N.Y.2d 31, 44 (N.Y. 1980). There must be specific evidence that the officer/owner knowingly participated in or had actual knowledge of the fraud. *Id.* Evidence that an owner or officer could have known, should have known, or was negligent in failing to learn of a fraud, is insufficient as a matter of law to satisfy this standard. *Id.*

In applying this well-settled law, courts in New York have repeatedly refused to allow participation in or actual knowledge of fraud to be inferred from an officer's performance of regular business activities, including ministerial tasks like signing deeds of sale, <u>absent separate and independent evidence of actual knowledge</u>. *See In re Bristol Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004) (refusing to infer that officers who implemented sales program that lead to overstated earnings reports intended to misrepresent earnings as sales program had been a normal way to do business); *see also SEC v. Espueles*, 579 F. Supp. 2d 461, 474 (S.D.N.Y. 2008) (noting that "certain allegations consistent with innocent conduct are never sufficient for a strong inference" including affirmative

acts to meet sales or revenue targets, failure to follow GAAP rules, and earnings restatements); *Schenk v. Cont'l Coal Reserves, Ltd.*, No. 88-CV-146, 1990 U.S. Dist. LEXIS 13554 at *22-23 (S.D.N.Y. Oct. 11, 1990) (refusing to infer that defendants who issued bills of sale in connection with fraudulent securities transaction were aware of fraud without specific evidence); *Ecuador Importada-Exportadora Cia., Ltda. v. ITF (Overseas) Corp.*, 94 A.D. 2d 113, 116-118 (1st Dep't 1983) (refusing to infer that officer who signed fraudulent check was aware of fraud absent any evidence of actual knowledge); *accord In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422-23 (3d Cir. 1997) (Alito, J.) (refusing to infer that senior officers who sold stock prior to issuing earnings restatement intended to engage in insider trading as sales were not large or unusual).

Moreover, without proof of actual knowledge, a defendant's inadvertent participation in a fraudulent transaction is insufficient as a matter of law to support a finding of fraud against him. *Eurycleia Partners, L.P. v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (N.Y. 2010) (refusing to infer that law firm was aware of misrepresentations contained in offering memoranda it authored because the false information came from the client and there was no evidence of actual knowledge); *Abu Dhabi Commercial Bank v. Morgan Stanley*, 888 F. Supp. 2d 431, 451-52 (S.D.N.Y. 2012) (same); *Mateo v. Senterfit*, 82 A.D.3d 515, 517 (1st Dep't 2011) (same).

Accordingly, courts applying New York law routinely dismiss fraud claims against officers and owners of companies if the only evidence is that they owned and/or operated a company and performed ordinary business activities in that capacity, even if they should have known fraud occurred. *See, e.g., White v. Nat'l Home Prot., Inc.*, No. 09-Civ.-4070, 2010 U.S. Dist. LEXIS 40414 *16-17 (S.D.N.Y. 2010) (refusing to infer that owner/officers who managed the day-to-day affairs of a business that engaged in persistent fraudulent conduct participated in or knew of fraud absent specific allegations of knowledge); *SEC v. Espueles*, 579 F. Supp. 2d 461, 474 (S.D.N.Y. 2008) (refusing to infer that two founders/officers of company who received regular financial briefings were aware that earnings reports were greatly overstated absent allegations of accounting knowledge); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006) (refusing to infer that senior officers must have been aware of their subordinates' fraudulent conduct absent specific allegations of knowledge); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003) (refusing to infer that audit committee members knew of accounting fraud, even though they could have learned of it, absent adequate allegations of knowledge); *High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 959 (2d Dep't 2009) (refusing to infer that officers knew of fraud absent specific allegations regarding the duties and responsibilities of the officers from which actual knowledge might be inferred); *People v. Nat'l Home Protection,*

*Page 8*

*Inc.*, No. 400431/09, 2009 N.Y. Misc. LEXIS 3667 at *10, 14-15 (N.Y. Sup. Ct. N.Y. Cty. Dec. 8, 2009) (refusing to infer that owners and principals of closely held company, who managed its day-to-day operations, participated in or knew about persistent deceptive marketing practices and fraudulent failures to pay warranty claims or refunds in the absence of specific evidence of knowledge or participation).

Finally, to hold an owner or officer liable for fraud, the evidence of their knowledge of or participation in the alleged fraud must be "clear and convincing." *Harding v. Naseman*, 377 Fed. Appx. 48, 49 (2d Cir. 2010) (citations omitted). Evidence that is "loose, equivocal or contradictory" is insufficient to meet this "high order of proof." *Century Pac, Inc. v. Hilton Hotels Corp*., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007), aff'd, 354 Fed. Appx. 496 (2009) (citations omitted).

**B.   The Evidence At Trial and Cited
          in the Opposition Brief is Insufficient as a
          <u>Matter of Law to Hold Hershco Liable for Fraud</u>**

Notwithstanding Appellees' blatant mischaracterizations of the record (as detailed *infra*, in Point I.C. ), it is undisputed that, after years of discovery and a three week trial, all of the evidence that Appellees contend is sufficient to hold Hershco personally liable for fraud is located in the trial transcript at A-3242-3245 (3 pages), A-3247-3253 (6 pages), A-3260-3265 (5 pages), A-3268-3270 (2 pages), A-3280-3281 (1 page), A-3290-3292 (2 pages) and A-3298-3300 (2 pages),

A-3360-3363 (4 pages) A-3503 (1 page) and two trial exhibits at A-5175 (3 pages) and A-5705 (1 page). (*See* Opp. Br. at 29-31, 40-41). This evidence, encompassing less than 30 pages of a 5,927 page appendix, <u>only</u> shows that Hershco founded and owned the United Homes Entities and engaged in a handful of ordinary business activities in that capacity. *See* A-3242-3245 (describing how Hershco founded his first company), A-3247-3253 (describing Hershco's ownership of some of the United Homes Entities), A-3260-3265 (describing the total sales of Galit Properties and authenticating deeds of sale for Appellees' homes), A-3298-3300 (describing how Hershco built the business from 1996 to 2000 and delegated responsibility for managing acquisitions, construction and sales to new employees), A-3268-3270 (describing a mortgage on a property in Queens and authenticating check requests), A-3280-3281 (authenticating check requests and describing loan guarantees), A-3360-3363 (describing meeting between Ms. Barkley and Hershco), A-3503 (describing how banks required a separate entity to own each property), A-3290-3292 (describing how the United Homes Entities were structured as a corporate combine on the advice of outside accountants ), A-5175 (guarantee of loan), and A-5705 (check request approval form for appraisal fees).

Thus, it is undisputed – and undisputable – that the totality of the evidence adduced against Hershco at trial indicates, at most, that Hershco (1) founded,

owned and managed the United Homes Entities, (2) signed the deeds of sale for Appellees' homes, (3) approved the payment of some expenses related to the sale of Appellees' homes, (4) guaranteed loans to the United Homes Entities in 2003, and (5) had one interaction with one of Appellees, Ms. Barkley, a year after she purchased her home, because she had written to the "President" of the United Homes Properties, LLC to express dissatisfaction with her home, in response to which Herscho offered to rescind the transaction and refund the purchase price. (*See* Opp. Br. at 29-31, 40-41).

Indeed, there is absolutely no evidence, much less clear and convincing evidence, in the record that could support an inference that Hershco had knowledge of or participated in any alleged fraud against Appellees.  In fact, there <u>was no testimony by any witness concerning Hershco's involvement with United Homes Entities's during 2002 and 2003</u>, which is the only time period during which any fraud is alleged to have occurred. (*See* A-3298-3301.)   Accordingly, Hershco cannot be held liable for fraud as matter of law.[2]

Supporting this conclusion even further, the New York County Supreme Court recently dismissed claims against two defendants who were the owners,

---

[2] Even assuming, *arguendo*, there was evidence that Hershco had participated in the transactions at issue beyond signing deeds or approving related expenses, that would still be insufficient to hold Hershco personally liable for fraud, absent other evidence of actual knowledge.  *See Eurycleia*, 12 N.Y. 3d at 559; *Mateo*, 82 A.D. 3d at 517.

principals and day-to-day managers of a closely held company that engaged in deceptive marketing and other fraudulent practices, such as arbitrarily canceling warranties and withholding refunds. *Nat'l Home*, 2009 N.Y. Misc. LEXIS 3667 at *10, 14-15. Although National Home was unable to dispute any factual issues regarding its liability, the Court refused to hold the officers personally liable because the only evidence adduced against them was that they were owners and principals of the business and managed its day-to-day affairs. *Id.* As the Court held, these facts were not even sufficient to state a claim for fraud, much less establish fraud by clear and convincing evidence. *Id.* ("these allegations fall far short of the requirements of CPLR 3016 which provides that 'the circumstances constituting the wrong shall be stated in detail'"); *see also White*, 2010 U.S. Dist. LEXIS 40414 at *16-17.

Moreover, not only was there no evidence of fraud against Hershco, all of the business activities that he performed on behalf of the United Homes Entities were inherently innocent and could not conceivably support an inference that Hershco knew that a fraud had occurred. Specifically:

- Hershco could not have learned of any fraud from the deeds of sale that he signed or the expenses he approved because these documents do not contain any information that could have alerted Hershco to any misrepresentations or omissions. *See* A-3260-3265, A-5760-5777. The only information contained in the deeds is the fact that title to the homes was conveyed to Appellees. *See* A-5928-5948. Similarly, the only information contained in the expense approval request was that an expense had been incurred. *See* A-5705. These documents contained no

information concerning sale prices or the condition of the homes, much less that any misrepresentations or omissions were made to Appellees.

- There is no evidence in the record that guaranteeing loans to the United Homes Entities provided Hershco with any information concerning the sale of homes to appellees, particularly given that the testimony in the record showed that all aspects of these sales were handled by individuals other than Hershco. (*See* App. Br. at 7-17; A-3280-3281, A-5175-5177.)

- Hershco's met with Appellee Sandra Barkley a year after she purchased her home and nothing occurred at their meeting from which knowledge of or participation with fraudulent conduct could be inferred.[3] Indeed, the record only shows that Ms. Barkley wrote a letter to the "President" of United Homes to complain about the condition of her home, in response to which Hersco offered to rescind the transaction and refund the purchase price. (*See* A-3361-3363.)

Thus, the trial evidence only shows that, at most, Herscho founded and owned the United Homes Entities and engaged in normal business conduct in that capacity, which is insufficient as a matter of law to support an inference that he participated in or actual knowledge of a fraud. Accordingly, the Court should reverse the District Court's order denying Hershco's motion for judgment as a matter of law and dismiss Appellees' fraud causes of action as to Hershco.

---

[3] *See Abu* Dhabi, 888 F. Supp. 2d 460 (it is axiomatic that knowledge acquired after an alleged fraud cannot support actual knowledge) (citing *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1129 (2d Cir. 1994). Moreover, if a gesture such as Herscho's offer to repurchase Ms. Barkley's home could support an inference of fraud, the clear and convincing evidence standard of proof would be entirely meaningless, insofar as this is precisely the type of "loose" "equivocal" or "contradictory" evidence the standard is intended to withstand. *See Century Pac.,* F. Supp. 2d at 219.

## C.    Appellees Blatantly Mischaracterize the Evidence

Given that Appellees are unable to show that the evidence at trial was sufficient to hold Hershco personally liable for fraud, Appellees resort to blatantly mischaracterizing the record and attempting to pass off evidence against other defendants as evidence against Hershco.  For ease of reference, each of these mischaracterizations by Appellees' counsel are addressed and rebutted in the chart below.

| Misrepresentation | Trial Record |
|---|---|
| Without any citation to the record, Appellees assert that they "purchased their homes from Yaron Hershco." Opp. Br. at 1. | Appellees purchased their homes from the United Homes entities, not Hershco. (App. Br. at 7-17.)  Additionally, there is no evidence in the record indicating that Hershco ever interacted with Appellees before, during or within one year of the purchase of their homes. |
| Citing to A-3243-3244 & A-3299-3300, Appellees improperly assert that Hershco participated directly in obtaining financing for, acquiring, overseeing the construction work on, and reselling the properties. Opp. Br. at 30[4] | There is no testimony at A-3243-3244 and A-3299-3300, or anywhere else in the record, that supports the proposition that Hershco participated in obtaining financing for, acquiring, overseeing the construction work, and reselling the properties to Appellees (or any other customers).  Rather, A-3243-3244 and A-3299-3300 contain Hershco's testimony concerning how he founded |

---

[4] It is ironic that Appellees cite A-3298-3300 for this proposition because this testimony demonstrates that Appellees prevented Hershco from giving testimony at trial concerning his knowledge of and involvement with the business after 2000 by objecting that the line of questioning was outside the scope of Hershco's direct examination by Appellees.  (A-3299-3301.)

| | the United Homes Entities in 1995, how he grew the business until 2000, including how he delegated responsibility for acquisitions, construction and sales to employees. In fact, there is no testimony of any kind against Hershco for time period of the alleged fraud. |
|---|---|
| Citing to A-3298-3300, Appellees improperly assert that Hershco had "hands-on knowledge of and control over every aspect of the business from acquisition to construction to sales and financing." *Id.* | There is no testimony at A-3298-3300, nor anywhere else in the record, that supports this characterization of Hershco's knowledge of and involvement in the United Homes Entities. In fact, there is no testimony at A-3298-3300 that addresses events after the year 2000. A-3298-3300 contains Hershco's testimony concerning how he grew the United Homes Entities from 1996 to 2000, including, as discussed above, how he delegated responsibility for acquisitions, construction and sales to new employees. |
| Without any citation to the record, Appellees baldly assert that the jury saw "[E]vidence that [Hershco] established and orchestrated every aspect of this widespread property-flipping scheme." *Id.* | There is no evidence in the record that Hershco orchestrated every aspect of the business or any aspect of an alleged "scheme," which is precisely why Appellees do not and cannot cite to any. |
| From pages 4-6 of the Opp. Br., Appellees assert that "<u>Defendants</u>:" (1) promised all the Plaintiffs fully renovated homes and then, after the closings, failed or refused to follow through on their promises; (2) "intentionally misrepresented the value of these properties." (3) "used their employees to show these properties to the Plaintiffs;" (4) "promised that all repairs would be completed by the <u>Defendants</u> after closing;" (4) | It is undisputed that there is <u>nothing</u> in the record that supports any of these statements with respect to Hershco. In fact, <u>there was not even an allegation that Hershco made any misrepresentations or omissions to Appellees</u>. Therefore, Appellants use of the term "Defendants" in connection with these assertions is an improper attempt to attribute evidence and allegations against other Defendants to Hershco, when no such evidence or |

*Page 15*

| | |
|---|---|
| Defendants failed or refused to complete repairs in the properties in any meaningful way; (5) "orchestrated with a stable of lenders and lawyers to engage in high pressure tactics designed to prevent Plaintiff from obtaining independent advice;" and (6) falsely represented that the Plaintiff' mortgages would be affordable because Defendants would help them find tenants who would pay rents high enough to help them cover the mortgage. | allegations exist. The fact that Appellees resort to such ploys simply underscores the total lack of evidence against Hershco. |

Accordingly, each of Appellees mischaracterizations of the trial evidence against Hershco is belied by the record, which further confirms that there was no evidence on the record, much less clear and convincing evidence, that could support finding Hershco liable for fraud.

## II.

### Hershco Cannot Be Liable for Civil Conspiracy or Unfair and Deceptive Trade Practices Because No Evidence was Adduced that Hershco Participated in or Had Actual Knowledge of Any Misrepresentations or Omissions

Given that there was insufficient evidence to conclude that Hershco participated in or had actual knowledge of a fraud against Appellees, there was also insufficient evidence to hold Herschco liable for civil conspiracy to commit fraud for violating New York General Business Law ("GBL") § 349.

To prevail on a claim for civil conspiracy, evidence must be adduced of the underlying tort (in this case fraud) plus (1) an agreement between two or more parties, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in furtherance of the plan or purpose, and (4) resulting damage or injury. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).

As described in Sections I, *supra*, no evidence was adduced that Hershco had actual knowledge of or participated in a fraud or any other wrongful conduct against Appellees. For these self-same reasons, no reasonably jury could find Hershco liable for conspiracy.

Likewise, to prevail on a claim under GBL § 349, evidence must be adduced that a (1) defendant's deceptive acts or practices were directed at consumers, (2) the acts or practices are misleading in a material way, and (3) the plaintiff was injured as a result. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citations omitted). As no evidence was adduced that Hershco personally participated in or had actual knowledge of any misrepresentations or omissions directed at Appellees, there is no evidentiary basis to conclude that Hershco violated GBL § 349.

Accordingly, this Court should reverse the District Court's denial of Hershco's motion for judgment as a matter of law and dismiss Appellees' civil conspiracy and GBL § 349 claims.

# III.

## Appellees Failed to Present Sufficient Evidence to Support
## Finding Hershco Liable for Alleged Misconduct of the United Homes Entities

**A.    No Evidence was Presented at Trial That the**
**United Homes Entities Operated as a Dummy for Hershco**

It is hornbook law that evidence that an owner abused the corporate form to conduct business in his personal capacity for personal as opposed to corporate ends is necessary to pierce the corporate veil and hold the owner personally liable for the company's obligations. *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656-57 (N.Y. 1976) (citing *Walkovsky v. Carlton*, 18 N.Y.2d 414, 418 (N.Y. 1967)); *see also United States v. Funds Held ex rel Wetterer*, 210 F.3d 96, 106-109 (2d Cir. 2000); *Gartner v. Snyder*, 607 F.2d 582, 587 (2d Cir. 1979); *Peterson v. Vallenzano*, No. 88-Civ.-5346, 1991 US Dist. LEXIS 180 at *8-9 (S.D.N.Y. Jan. 9, 1991).   As Hershco demonstrated in the App. Brief, because no evidence was presented at trial that Hershco used the United Homes Entities to conduct business in his personal capacity (which Appellees own expert's testimony confirms), controlling case law dictates that he cannot be held personally liable for the obligations of the United Homes Entities.  (App. Br. at 43-45, citing *Walkovsky*, 18 N.Y.2d at 418; *Atlas*, 40 N.Y.2d at 656; and *Gartner*, 607 F.2d at 587).

In Opposition, Appellees completely ignore this black letter law.  (Opp. Br. at 35-39.)   Instead, Appellees rely solely on evidence that the various United

Homes Entities operated as a single enterprise, i.e., that they transferred funds amongst themselves without contracts, and shared office space and expenses. (*Id.*) Yet, under controlling New York case law, the owner of multiple corporations which function as a single enterprise, or a corporate combine, is protected by the corporate form to the same extent as the owner of a single corporation. *Walkovsky*, 18 N.Y.2d at 418; *Gartner*, 607 F.2d at 587.  Indeed, the mere fact that an individual organizes his business as a corporate combine does not establish that the constituent corporations are his dummies or alter egos.  *Walkovsky*, 18 N.Y.2d at 419-20; *Gartner*, 607 F.2d at 587; *Vallenzano*, 1991 US Dist. LEXIS 180 at *8-9 (refusing to pierce the corporate veil where multiple corporations controlled by defendants commingled funds but there was no evidence of personal use).  As the New York Court of Appeals recognized in the seminal case of *Walkovsky v. Carlton*:

> [I]t is one thing to assert that a corporation is a fragment of a larger corporate combine which actually conducts the business.  It is quite another to claim that <u>the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends.</u>

18 N.Y.2d 414, 418 (1967).

The New York Court of Appeal's decision in *Walkovsky* demonstrates precisely why there is insufficient evidence to hold Hershco personally liable for the United Homes Entities.  *Id.* at 419.  In *Walkovsky*, the defendants owned ten

taxicab companies that operated as a single business, sharing financing, supplies, repairs, employees and garaging, among other things.  The plaintiff argued that, because there were no distinctions between these companies and the multi-corporation structure had been adopted to prevent parties injured by their taxicabs from obtaining full recovery, the defendants should be held individually liable for the companies' debts.  *Id.* at 418-19.  While the Court recognized that this evidence could potentially justify treating the ten taxicab companies as one, the Court refused to impose individual liability on the owner defendants because there were insufficient allegations that they were using the "business in their individual capacities" for personal, as opposed to corporate, ends.  *Id.*  As the Court held:

> While the complaint alleges that the separate corporations were undercapitalized and that their assets have been intermingled, it is barren of any "sufficiently [particularized] statements" that the defendant Carlton and his associates are actually doing business in their individual capacities, shuttling their personal funds in and out of the corporations" without regard to formality and to suit their immediate convenience."  Such a "perversion of the privilege to do business in a corporate form" would justify imposing personal liability on the individual stockholders.  Nothing of the sort has in fact been charged, and it cannot reasonably or logically be inferred from the happenstance that the business of Seon Cab Corporation may actually be carried on by a larger corporate entity composed of many corporations which, under general principles of agency, would be liable to each other's creditors in contract and in tort.

*Id.* at 420.

Similarly, in *Gartner v. Snyder*, this Court reversed a district court's decision to pierce the corporate veil and hold a real estate developer, who, like

Hershco, organized his real estate business as a corporate combine, personally liable for the debts of one of his companies.  607 F.2d at 587.  The company in question was "thinly capitalized," there were no separate books, files or office space for the various companies, and the developer had even used corporate money for some minor personal expenditures.  This Court, however, held that such facts, while potentially sufficient to pierce the corporate veil between the developer's other companies, were insufficient under New York law to establish that the developer had used the company to carry out his own personal affairs such that the company had become his alter ego.  *Id.* at 587-88.

Here, just as in *Walkovsky* and *Gartner*, there is no evidence that Hershco used the United Homes Entities to conduct personal business in his personal capacity.  (*See* App. Br. at 43-45).  In fact, Appellees' expert witness, Alan Blass, testified that there was no evidence that Hershco commingled his personal assets with those of the United Homes Entities or that he arbitrarily removed funds from the business. (A-3662-3264.)  Moreover, unlike *Gartner*, there is no evidence that Hershco used corporate funds for personal expenses.  (*Compare* A-3662-3264 *with Gartner*, 607 F.2d at 587.)

Accordingly, insofar as no evidence was adduced at trial that Hershco used the United Homes Entities to conduct business in his personal capacity for personal

ends, controlling case law mandates that Hershco cannot be held personally liable for their obligations.

**B.    There is No Evidence That Hershco
        Used the United Homes Entities to Commit Fraud**

Separate and apart from Appellees' failure to present any evidence that Hershco used the United Homes Entities to conduct business in his personal capacity, there was insufficient evidence to pierce the corporate veil because Appellees failed to present <u>any evidence</u> that Hershco abused the corporate form in order to commit fraud.

Under New York law, an owner cannot be held personally liable for a corporation's debts except upon a showing that he used complete control and domination over the corporate entity to commit a fraud or create inequity. *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997). As Hershco demonstrated in the App. Br., no evidence was adduced at trial showing any connection between the corporate form of the United Homes Entities and the misrepresentations and omissions that were purportedly directed to Appellees. (App. Br. at 48-50.)

In Opposition, Appellees argue that Hershco abused the corporate form to commit fraud by operating a business structured as a corporate combine to buy, renovate and resell homes. (Opp. Br. at 39-42.) But this argument fails as a matter

of basic New York law.  *See Walkovsky*, 18 N.Y.2d at 421.  As the Court of Appeals expressed in *Walkovsky*, conduct that is legitimate for a single corporation, does not become fraudulent by virtue of it being carried out by an enterprise composed of multiple corporations.  *Id.*  Indeed, as the *Walkovsky* Court explained:

> <u>The plaintiff's injuries are the same regardless of whether the cab which strikes him is owned by a single corporation or part of a fleet with ownership fragmented among many corporations</u>.  Whatever rights he may be able to assert against parties other than the registered owner of the vehicle come into being not because he has been defrauded but because, under the principle of *respondeat superior*, he is entitled to hold the whole enterprise responsible for the acts of its agents.

*Id.*

Here, just as in *Walkovsky*, there is no evidence that Appellees' injuries would have been any different, or the employees and agents of the United Homes Entities would have conducted themselves any differently, had the United Homes Entities been organized as a single corporation.  Because Appellees' alleged injuries could not have been caused, in any way, by the operation of the United Homes Entities as a corporate combine, there is insufficient evidence to conclude that Hershco used the corporate structure of the United Homes Entities to commit fraud.

In addition, there could be no finding that Hershco abused the corporate form to commit fraud because, as demonstrated in Point I, *supra*, no evidence was

presented at trial to show that Hershco participated in or had actual knowledge of any fraud against Appellees. Absent such evidence, Hershco cannot be held to have abused the corporate form to commit fraud.

## IV.

## Hershco Did Not Waive Any Appellate Arguments

Finally, in contravention of the trial record and the District Court's order denying Hershco's Federal Rule 50(b) motion, Appellees argue that Hershco waived each of his arguments on appeal by not raising them in his initial Federal Rule 50(a) motion before the District Court. Like Appellees' fraud arguments, Appellees' waiver arguments rest on blatant mischaracterizations of the record. The transcript of the Rule 50(a) hearing plainly shows that each of Hershco's arguments on appeal were raised and that Appellees acknowledged and opposed them. In fact, the District Court's opinion denying Hershco's Rule 50(b) motion expressly recognized that these arguments were preserved. In any event, even if Hershco had not raised these arguments during the Rule 50(a) hearing (which he did), well-settled law demonstrates that Appellees waived any right to assert this waiver argument because they failed to raise it in opposition to Hershco's Rule 50(b) motion.

To preserve an issue for a post-verdict Rule 50(b) motion, and a subsequent appeal, a movant's Rule 50(a) motion, including oral argument, need only

articulate the deficiencies in the plaintiff's proofs with sufficient specificity so as to provide notice to the court and the plaintiff of the alleged deficiencies and thereby afford the plaintiff an opportunity to cure. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286-87 (2d Cir. 1998); *see also W. Union Co. v. Moneygram Payment Sys., Inc.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010); *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006). So long as a Rule 50(a) motion provides sufficiently specific notice, it need not describe the deficiencies in the plaintiff's proofs in great detail or length. *See, e.g., Kusens*, 448 F.3d at 361 (courts take a lenient view of what constitutes a Rule 50(a) motion so long as notice is given); *W. Union*, 626 F.3d at 1367 (even a cursory motion suffices so long as it gives notice of alleged deficiencies).

Here, the transcript of the Rule 50(a) hearing demonstrates not only that Hershco and other defendants repeatedly objected to the sufficiency of the evidence but that Appellees recognized it and responded. Defendants argued, *inter alia*, that:

- [Appellees' expert] "did not allege fraud or prove fraud." (A-4279.)

- "There's been no fraud proven." (A-4283:22.)

- "There has been no proof of fraud. The burden has not shifted to the defense. They have failed to meet their prima facie obligation of alleging facts sufficient for the jury to consider." (A-4281:3-6.)

- "The property flipping scheme, as they call it, not one witness has come in here and said that this was, in fact, a scheme, or that there's any issue or problem with property flipping." (A-4281:6-9.)

- "Moving money around is not fraud." (A-4275:8-9.)

- "Justice would be to dismiss these claim[s] – all claims dealing with fraud." (A-4285:7-8.)

- There was insufficient evidence for the jury to consider Appellees' claims for unfair and deceptive trade practices, which were based on the same alleged misrepresentations and omissions as the fraud claims. (A-4293:3-9.)

Counsel for Appellees, Sara Manaugh, heard these arguments and argued in response that the evidence was sufficient to hold Hershco and other defendants liable for fraud, stating:

> The fraud requires a showing that the defendant has intentionally misled the plaintiff and that the plaintiff had relied reasonably on the misrepresentation and they were harmed thereby. The evidence is in the record for that.

(A-4287:7-11.) Moreover, Peter Thomas, counsel for United Homes Properties, LLC, immediately replied to Ms. Manaugh, stating:

> I fail to hear, Your Honor, one specific bit of evidence that counsel referred to. Saying it is clear from the record, it's not clear to me, Your Honor.

(A-4287:21-23.)

Similarly, the transcript of the Rule 50(a) hearing demonstrates that Hershco repeatedly argued that Plaintiffs-Appellees had failed to adduce sufficient evidence to pierce the corporate veil. Hershco's counseled argued, *inter alia*, that:

- "The allegations that plaintiffs are making do not support what they are seeking to do in piercing the corporate veil;" (A-4272:1-3.)

- Hershco "at no time took personal money out of the company;" (A-4272:10-11.) and

- "through an analysis of his personal income tax" Plaintiffs-Appellees' expert determined that Hershco never took money out of the United Homes Entities accept as compensation for which he paid taxes.  (A-4272:13-15.)

Counsel for Plaintiffs-Appellees, recognizing that this was sufficiency argument with respect to Appellees' corporate veil claims, replied by stating:

> Your Honor, I think there is adequate evidence in the record that Mr. Hershco completely dominated his companies and he abused the privilege of doing business in the corporate form.  (A-4272:22-25.)

Moreover, having participated in the Rule 50(a) hearing, the District Court recognized in its Rule 50(b) decision that defendants had clearly articulated these deficiencies in Appellees' proofs during the hearing.  In particular, the District Court expressly recounted that defendants had argued in their Rule 50(a) motions that:

- There was insufficient evidence that Hershco "abused the corporate form in furtherance of fraud";

- Plaintiffs presented "no evidence of fraud"; and

- Plaintiffs "failed to present sufficient evidence of civil conspiracy because there was no evidence of fraud, [or] conspiracy."

*Barkley v. United Homes, LLC*, No. 04-cv-00875, 2012 U.S. Dist. LEXIS 85793 at *26-27 (E.D.N.Y. June 20, 2012).  Thus, based on the trial record it is indisputable that Appellees received notice of each of the arguments raised in defendants' Rule 50(b) motions and their current appeals.  Accordingly, Appellees' contention that these arguments were waived must be rejected.

Finally, separate and apart from the fact that Hershco properly preserved each of his appellate arguments, Appellees' waiver argument must be rejected because Appellees failed to raise it before the District Court.  *See Gronowski v. Spencer*, 424 F.3d 285, 297 (2d Cir. 2005) (party objecting to argument on ground that opposing party failed to raise such argument in their FRCP 50(a) motion waives such objection by failing to raise it in opposition to FRCP 50(b) motion); *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir. 1994) (same); *see also Williams v. Runyon*, 130 F.3d 568, 571-572 (3d Cir. 1997) (same) (collecting cases).  As the District Court recounted in its Rule 50(b) ruling, Appellees argued in opposition to the Rule 50(b) motions that defendants had waived two arguments by failing to raise them in their Rule 50(a) motions.  *Barkley*, 2012 U.S. Dist. LEXIS 85793 at *26-27; *see also* Pls.' Opp. to Mot. JMOL at 4-5.  Appellees, however, failed to argue (as they do now) that Hershco waived the right to dispute the sufficiency of the evidence for fraud or to justify piercing the corporate veil by failing to raise these arguments in his Rule 50(a) motion.  *Id.*  After failing to raise these waiver

arguments before the District Court, Appellees cannot raise them now for the first time on appeal.  *Gronowski*, 424 F.3d at 297.

Accordingly, this Court should reject Appellees' contention that any of Hershco's appellate arguments have been waived.

## <u>CONCLUSION</u>

For the foregoing reasons, Hershco respectfully submits that this Court should reverse the decision of the District Court denying Defendants' motion for judgment as a matter of law and enter judgment as a matter of law in Hershco's favor.

Dated:    New York, New York
          May 9, 2013

Respectfully submitted,

OVED & OVED LLP
*Attorneys for Yaron Hershco*

By: /s/ Darren Oved
Darren Oved, Esq.
401 Greenwich Street
New York, New York 10013
(212) 226-2376

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 6,862 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

Dated:  May 9, 2013